Fred Atchison on behalf of the appellant in the case. This appeal is predicated upon a violation or assertion that it's a violation of double jeopardy in the Doctrine of Collateral Estoppel as set forth in the brief. The situation that confronted Mr. Thurber was unusual in that Mr. Thurber was prosecuted not once but actually twice. Well, I think we know factually, and I think that we know where you – this is a little bit a different spin to double jeopardy, obviously, from the standpoint that there was no jury attached in this particular situation. What – you know, what case laws do we have to rely on to import collateral estoppel into this particular criminal matter and make it a part of double jeopardy? Or by the same token, why isn't this something – it's not a double jeopardy claim, but something that, if it goes to trial, you can talk about other issues that work collateral estoppel applies. Well, in this case, Mr. Thurber – or Mr. Shewan, who was the prosecutor in both the State case and the one that drafted the Federal indictment, chose not to appeal the ruling by the State of Nevada. Now, there was no really – no different law in the State of Nevada than exists in the Ninth Circuit. That's sort of implied by the briefs, but it's not true. In Colissimo, in the State of Nevada, they found – the Supreme Court of the State of Nevada found that an attempt to lure would not run afoul of the law. Mr. Shewan could have appealed the situation, but instead of doing that, he actually – Well, he could have, but does he have to? That's the issue. I certainly think that if he doesn't, then he's stuck with the decision. The issue is the same. But we don't have any – we don't have any case that tells us that exactly on point. Well, I believe we do. What would that be? In the brief, in our reply brief, United States v. Sejas, 817, Fed 2nd, 595, the court noted the prosecutor in Sejas could have but did not appeal the court's pretrial dismissal based upon double jeopardy grounds, and the decision became a final order as if it had been affirmed on appeal. Okay, but that appealed double jeopardy, or what were they appealing in that case? In that case – Here we're talking about that there was a determination based on that – because apparently in the state court, the state court judge said it had to be actually a minor. It couldn't be – right? Well, the state court – So they couldn't prove an element of the state court crime. In Colissimo – well, the state court ruled that. But Colissimo indicated that in an attempt situation, it could properly be brought. So had Mr. Shewan appealed, he likely would have prevailed in the state court. But he chose not to appeal. Now, the fact that the issue is the same and the fact that you have a determination that is allowed to be final because he doesn't appeal it, that gives finality to it. And that's what triggers the violation of collateral estoppel in this case under Tarkanian. You can't have – what it allows the government to do is actually engage in sort of a pernicious type of forum shopping because the same prosecutor that was involved in the state case, the same task force, unlike the 20 other cases that have been brought in the State under this particular task force, and this was talked about in the hearing, unlike all of those, this is the only case that was first brought in state court, failed in state court, then brought again in state court by a grand jury proceeding, failed in state court. The State, the same prosecutor elected not to appeal that, but instead went and drafted a Federal indictment and went after him Federally. So what you're allowed to do under this situation, unlike all of the others, and there was testimony about the government going after other people by bringing an indictment first or going after many other people by going the State route first. Well, what about all the – what about the cases where, you know, obviously, I think you have one where there was an acquittal in state court and then they brought a Federal prosecution. There's one case there. That was Bernhardt. And then you also have – it's not unheard of where prosecutors in state court lose motion to suppress. I mean, California, it's 1538.5 or whatever, and then they bring the same action in state court, in Federal court, because the evidence isn't going to be suppressed there. If the government is involved in the problems that created the suppression, then the government might be foreclosed under the doctrine of collateral estoppel. In this case, what it allows the government to do, you don't have independent sovereigns. You essentially have the State action – pardon me. Counsel, I don't understand. So I'll just float my concern for you. I don't understand an argument that there aren't independent sovereigns. There are joint task forces often. So, I mean, I understand if you argue the Bartkus exception issues and how those have been analyzed in the courts, but I don't understand how you can say there aren't separate sovereigns. Because the way it's set up here, you'll find when you read the record in this case, Judge Gould, that in this case the State prosecutor was allowed to deal away Federal prosecution as part of his ability to sell a State court plea. That's hardly separate. In fact, the only thing that isn't separate in this case is the fact or that is separate is the fact that Mr. Shewan had to go to Mr. Racho and say, can I prosecute him Federally? That's the only thing. Other than that, Mr. Shewan did the State prosecution and then he drafted the case. But if he were the sole sovereign, would he have had to go get permission? In other words, if he was representing the sole sovereign, he would just go do it, wouldn't he? Yes, but if you're going to give any effect to Bernhardt, and if you look at Bernhardt, the problem is how close are these two entities? It's not to say that, of course, he has to have approval of a Federal prosecutor. That isn't sufficient or else in every case you would be able to have this, this, this. But to get within Bartkus, don't you really have to show that one is really running the other? Well, that's in fact what we showed. Well, maybe you didn't, though. But if the State prosecutor has to go to the Feds and say, may I do this, then the State is not running the Feds. Well, he doesn't have a key to the grand jury room. That's the only thing. The State prosecutor drafted the indictment. The State prosecutor lost the State case. The State prosecutor elected not to appeal it. And at that point, I think you've got a real res judicata problem, because he says, I don't want to appeal the situation. I want to try a different. Let me ask you a question. You know, we have res judicata applies when an individual, let's say, brings a claim and there's a final judgment and it forecloses relitigating it. But here we have a State prosecution under State law, and that's tossed out. And then we have a Federal prosecution. So I'm not aware of any case that's ever applied res judicata in that context. Bernhardt did in that context. In fact, this is stronger than Bernhardt. In Bernhardt, you didn't have the decision by the State prosecutor to not go to the appellate process. In this case, the State prosecutor affirmatively said, I have decided that I'm not going to go to the appellate process. Instead, I am going to go directly to Federal court. This is after losing twice in State court, but not at the appellate division. In other words, the prosecutor in this case accepted the decision of the District Court by not appealing to the Supreme Court. And that's what CEJAS says. He essentially ---- That's accepting it under State law, but why would that foreclose Federal law? Well, I think when you have no independence, and you don't have independence here, with all due respect, you have a joint task force and you have two abilities. Excuse me. Yeah. No, I'm sorry. I understand your contention. But I'm I don't fully understand whether you're saying the state was running the federal government or the federal government was running the state. Because at least as I'm understanding, BARTCA is subject to studying it further. It's like the Supreme Court has said that the dual sovereign idea won't apply if one sovereign is you is if one of the proceedings is a sham. And, you know, one side is just running the other side. Well, Bernhardt says is your contention that the federal government proceeding is a sham being run by the state or is it that the state proceeding was a sham being run by the feds? Either situation would violate jeopardy, in my opinion. But the Bernhardt decision, the Bernhardt case, in fact, was a state prosecution that was failed, that went to the federal court, and the federal court sent it back saying that there was some substance to this claim. And they adopted essentially in Bernhardt the BARTCA's exception. The BARTCA's exception was also adopted in Zone. But you could not conceive of a set of facts more clearly showing that Mr. Schuin, a state prosecutor, made the decisions all along. He made the decisions to indict. He went all he did is ask Mr. Rachel, can I prosecute federally? And Mr. Rachel said yes. All right. I think we know the facts here. So your time's up. I'll give you a minute on rebuttal. Thank you. Thank you. Thank you. Good morning, Your Honor. Good morning. And may it please the Court, Robert Ellman for the United States. I don't think we've taken a very close look at what BARTCA's actually says in the first instance, so I just want to briefly touch on that. As the Court's acknowledged already, successive prosecutions by different sovereigns does not implicate the double jeopardy clause. But in BARTCA's indicta, the Supreme Court hypothesized in 1959 that a circumstance might arise in which one sovereign so dominates or manipulates the prosecutorial machinery of another that the latter's will and volition in its own proceedings is overborne and taken over by the other sovereign. In those 47 ensuing years, there is not a single reported appellate decision in the United States in which the BARTCA's exception has been applied. This case should not be the first one for several reasons, most of which have already been touched upon by the panel and its discussion so far. First, the appellant has to convince this Court that it has jurisdiction to proceed in the first place, and jurisdiction is lacking for three reasons, again, reasons the panel seems to have touched upon already. First, jeopardy has not attached in the State Court proceeding here because no fact has ever been addressed by a fact finder. That was dismissed by the Court for insufficiency of the indictment upon a finding by the trial judge that there must be, in fact, an actual victim under the age of 16. There isn't one, so the indictment was insufficient. At that point, with the express permission of the United States Attorney and with immediate supervision by the United States Attorney, Mr. Shewan, acting as a special assistant, was permitted to indict the case in Federal Court. We have no former jeopardy, so there can't be double jeopardy, nothing in the Fifth Amendment. Well, I guess, I know that you didn't, there wasn't, I guess there wasn't a witness sworn in or a jury wasn't impaneled. The question I have is, and I'm not, the State Court couldn't have gone another round, could it? I mean, you get two bites of the apple in this situation, is that correct? Well, that Well, they made a legal finding that there could not have been a crime because the State had not alleged the existence of the minor. And I'd actually like to point the Court to a couple of cases that require this factual determination. One is United States v. Olson, 751 F. 2nd, 1126 at page 1129. And it says jeopardy does not attach without the consideration of some or all of the factual elements in the case. And the problem, and why they decided in Olson that jeopardy had never attached, was that the Court made a, quote, a purely legal determination about the sufficiency of the indictment without receiving and evaluating evidence and applying it to the question of guilt or innocence, end quote. That's precisely what we have here. But even if you could get around that point, there are two other barriers to jurisdiction in this case. The first is identical elements, because under Blockberger, jeopardy is not implicated if the prior crime and the former crime have different elements, which they do here. The existence of an actual minor under the age of 16 is required by the State. It's not required by the Federal Government. And conversely, in the Federal prosecution, you need an interstate nexus, which is not required in the State prosecution. And that's one of the elements of the crime? I beg your pardon? That's an element of the crime? Yes, Your Honor. And for that reason alone, we have no double jeopardy problem here. And third, and this takes us to most of the matters the panel focused on already, this is an instance where the appellant has already had a full and fair evidentiary hearing. During the course of that hearing, he produced no evidence whatsoever to establish that this case falls within that very narrow Bartkus exception. It differs from Zone, this Court's case in Zone in that respect, because there, on its face, the appellant's claim was at least colorable because those facts, if proven, could conceivably have demonstrated that he was within Bartkus. Here, he's already had the hearing that the appellant in Zone never got. And now, as we stand here in the wake of that hearing, there is not only no evidence to support this claim, but it's been conclusively rebutted. And, Judge Nelson, your point on that matter is my point as well. The defendant here concedes, and it's at page 9 of the opening brief, that he needed the United States Attorney's permission to bring the indictment in the first place, and also that he had to be immediately supervised by the United States Attorney during the course of that litigation. Those concessions alone take this case out of the Bartkus exception, because he can't show, given those facts, and again, there's no contrary evidence, that the volition of the United States has been stripped away by a state prosecutor. It hasn't. He's had his day in court. That's been decided. There are just a few other points I'd like to touch on. First of all, as I read the Colosimo opinion from the Nevada Supreme Court, it does not say that in an attempt scenario you don't need a minor. It says that that's an issue for another day, because that was not an attempt case. It would be dicta at best. Secondly, the Sejas case does not say that the government is to stop from relying on a final adjudication by a trial court. That's nowhere in that opinion, unless you appeal. That seems to be the appellant's point. That's not in Sejas, and in fact, in Bernhardt, there was a dismissal at the trial court level, and no one raised this point there. Third, this distinction isn't based, and this goes to Judge Nelson's question to appellant's counsel, it's not because the state prosecutor didn't have a key to the grand jury room. That's certainly an argument that I've heard for the first time here today. He needed permission, and as you read the testimony from that evidentiary hearing, it's quite clear that the United States attorney had in the first instance and at all times maintained control over whether that indictment could be brought and beyond that supervision while that case proceeded. I should add that Mr. Shewan left the district attorney's office two months after the indictment was brought, and the United States attorney's office, through assistant United States attorneys alone, continued prosecuting that case, and we do continue prosecuting it to this day. Is that part of the record? Actually, it is, because at the hearing they discussed when Mr. Shewan left. All right. And then my last point, and this has come up today in this argument, and it's also at page nine of the reply brief, and I have to take issue with that. The United States attorney's office never authorized Mr. Shewan to threaten more onerous prosecution in federal court against defendants who refused to enter into plea agreements in state court, and I just wanted to be clear about that point in the record. And unless the court has further questions, I'll yield the remainder of my time. Does anyone on the panel have any additional questions? No. I don't. All right. That appears. Thank you. You have one minute. Thank you. Mr. Shewan was not he proceeded in the grand jury proceeding in federal court without Mr. Raychaud. He was there alone. He drafted the indictment. As far as the immediate supervision of Mr. Raychaud, the record doesn't really reflect that there was any other than seeking permission. The elements are the same because Mr. Thurber was prosecuted in his count with both luring and the attempt to lure by the nature of the count that was charged against him. So under Blockberger, the claims are exactly the same. The Bernhardt decision, I believe, is the mirror image of this. In Mr. Bernhardt's case, the prosecutor, the state prosecutor, had to get permission of the federal prosecutor, just like in this case. But he was paid by the state. His salary was paid by the state, as was Mr. Shewan. And I don't see any factual distinction between Bernhardt in this case. What we're allowing to happen is, in Mr. Thurber's case, we're allowing the government to essentially have a cover for a failed state prosecution. And in this case, and it's clear from the record, that this cover, the threat of federal prosecution, was used repeatedly. There can hardly be an assertion that there's independence under this scenario. Thank you. All right. Thank you for both of your comments. And this matter will now stand submitted. The Court is now in recess for the week. Thank you.
judges: T.G. Nelson, Gould, Callahan